```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :    12-CR-391 (BMC)
        v.                  :
                            :    November 14, 2012
JASON CARTER,               :
                            :    Brooklyn, New York
             Defendant.     :
                            :
----------------------------X


        TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
          BEFORE THE HONORABLE STEVEN M. GOLD
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:         LORETTA LYNCH, ESQ.
                            UNITED STATES ATTORNEY
                            BY: MATTHEW ARMATRUDA, ESQ.
                            ASSISTANT U.S. ATTORNEY
                            271 Cadman Plaza East
                            Brooklyn, New York  11201


For the Defendant:          ERIC SCHLOSSER, ESQ.




Audio Operator:


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            102 Sparrow Ridge Road
                            Carmel, NY 10512
                            (845) 260-1377




Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
 1                    THE COURT:  Hello.

 2                    MR. SCHLOSSER:  Good morning, your Honor.

 3     Eric Schlosser for Mr. Carter.

 4                    THE COURT:  Good morning.

 5                    Mr. Carter, do you speak and understand

 6     English?

 7                    THE DEFENDANT:  Yes, sir.

 8                    THE COURT:  Mr. Carter, the reason you're in

 9     my courtroom today is that your lawyer indicates that

10     you wish to surrender your right to trial and enter a

11     plea of guilty to Count 1 of the indictment in which

12     you're charged.

13                    THE DEFENDANT:  Yes, sir.

14                    THE COURT:  Before I may hear any plea of

15     guilty you choose to offer, I need to make sure you

16     understand that I am not the judge who is presiding

17     over your case.  The judge presiding over your case is

18     United States District Judge Brian Cogan.  Judge Cogan

19     is the one who will decide whether any plea of guilty

20     you offer should be formally accepted and if it is, how

21     your sentence should be determined.

22                    I am a magistrate judge and I am not

23     authorized under the law to take those steps, that is

24     to formally accept your plea or decide your sentence.

25     If you wish, you have the absolute right to have
```

1    District Judge Cogan listen to your plea, and if that

2    is your choice, there will be no prejudice to you.

3              In the alternative, though, if I have your

4    consent and agreement, I do have the authority to be

5    the judge who hears your plea, and if you agree to

6    present your plea to me, I'll arrange for this entire

7    proceeding to be recorded and transcribed, so that

8    Judge Cogan can read all the words we've said to each

9    other before he's called upon to decide whether to

10   accept your plea or what your sentence should be.

11             Do you understand everything I've said?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Do you wish to surrender your

14   right to have Judge Cogan listen to your plea of guilty

15   and do you wish to present it instead to me?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Are you making this decision

18   voluntarily and of your own free will?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Have you been threatened or

21   pressured by anyone to get you to agree to this?

22             THE DEFENDANT:  No.

23             THE COURT:  Did you review this consent form

24   carefully with Mr. Schlosser and then sign it?

25             THE DEFENDANT:  Yes, I did.

1          THE COURT:  Mr. Schlosser, do you know of

2   any reason why your client should not consent to

3   proceed before me for these purposes?

4          MR. SCHLOSSER:  No, your Honor.

5          THE COURT:  I find the consent of the

6   defendant knowing and voluntary.  I'm adding my

7   endorsement to the consent form to reflect my finding,

8   and we'll proceed from there.

9          Mr. Carter, before I may recommend to Judge

10  Cogan that he accept any plea of guilty that you may

11  choose to offer, I need to ask you a lot of questions.

12  The questions are very important.  They're designed to

13  make sure that you understand what a serious decision

14  it is you are about to make.

15         The questions are also designed to create a

16  record that will demonstrate that I explained your

17  rights to you, you acknowledged that you understood

18  them and you agreed to give them up.  Once that

19  happens, any plea of guilty you then offer will be

20  legally valid and permanently binding upon you.

21         Accordingly, I urge you to listen to my

22  questions carefully.  If I ask you anything that you're

23  not sure you understand, just tell me and I will try to

24  re-ask the question and make it clearer to you.  If you

25  want to stop at any time to ask me a question or

1   because you'd like to speak privately with Mr.

2   Schlosser, just tell me and I'll give you that

3   opportunity.

4            Is all of this clear to you so far?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  It's so important that you tell

7   the truth during this proceeding that I will direct

8   that you be placed under oath before we go any further,

9   so please rise.

10           THE CLERK:  Mr. Carter, please raise your

11   right hand.

12           (Defendant is sworn.)

13           THE COURT:  Please be seated, Mr. Carter.

14           Now that you've been sworn, when you answer

15   my questions, you do so under the penalties of perjury

16   or making a false statement.  That means that if you

17   lie during this proceeding, criminal charges could be

18   brought against you just for that.

19           Is this clear to you?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  State your full name.

22           THE DEFENDANT:  Jason Leon Carter.

23           THE COURT:  How old are you?

24           THE DEFENDANT:  45.

25           THE COURT:  How far did you go in school?

```
 1              THE DEFENDANT:  I think it was eighth grade.

 2              THE COURT:  Is English your native language?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  Are you having any difficulty

 5   understanding me today?

 6              THE DEFENDANT:  No.

 7              THE COURT:  Are you now or have you recently

 8   been seeing a doctor or a psychiatrist or any

 9   healthcare professional at all for mental, physical or

10   emotional problems of any kind?

11              THE DEFENDANT:  Yes.

12              THE COURT:  What are you being treated for?

13              THE DEFENDANT:  I have a learning

14   disability.

15              THE COURT:  Okay.  And who's treating you

16   for that?

17              THE DEFENDANT:  I forgot the doctor's name

18   but it's from the SSI.  I receive disability.

19              THE COURT:  Okay.

20              THE DEFENDANT:  I've been in special

21   education -- special education, for my mental health

22   doctor there, in (ui), you know, like when you're going

23   to for SSI, they send you to their doctor.  So I didn't

24   have like a special doctor.

25              THE COURT:  Okay.  Have you been treated
```

1  while you're in custody?

2            THE DEFENDANT:  No, I haven't.

3            THE COURT:  Were you taking any medication

4  in connection with your disability?

5            THE DEFENDANT:  No, just -- I'm just -- I'm

6  on diabetic medication.

7            THE COURT:  Okay.  So you're taking insulin

8  for that?

9            THE DEFENDANT:  Metaformin (ph).

10           THE COURT:  Okay.  Other than medication for

11  diabetes, are you receiving medication for any other

12  kind of problem?

13           THE DEFENDANT:  Well, I got other conditions

14  that led from my diabetes.

15           THE COURT:  Okay.

16           THE DEFENDANT:  Like bad nerves in my legs,

17  and they give me pills for that.

18           THE COURT:  Those are pain pills?

19           THE DEFENDANT:  Like, yeah.  My legs get

20  numb and the nerve -- the damage is bad, so they gave

21  me pills for that.

22           THE COURT:  Do you know what that's called?

23           THE DEFENDANT:  I don't know the name

24  exactly of the drug but --

25           THE COURT:  Okay.

```
 1              THE DEFENDANT:  Every day, I take it.

 2              THE COURT:  Other than the -- I forgot the

 3    name of it already myself -- the pill for the diabetes

 4    and the pill for the leg pain, are you taking any other

 5    medications?

 6              THE DEFENDANT:  No.

 7              THE COURT:  Are you being treated for any

 8    other conditions or have you been over the last couple

 9    of months?

10              THE DEFENDANT:  No.

11              THE COURT:  Do the pills you're taking

12    affect your ability to concentrate or stay awake?

13              THE DEFENDANT:  No, no, it doesn't.

14              THE COURT:  Other than the medicines that

15    were prescribed to you by the doctors, have you had any

16    alcohol or drugs in the last 24 hours?

17              THE DEFENDANT:  No, I haven't.

18              THE COURT:  Have you ever been hospitalized

19    or treated for drug or alcohol abuse?

20              THE DEFENDANT:  No.

21              THE COURT:  Have you ever been hospitalized

22    or treated for a psychiatric or emotional problem other

23    than your learning disability?

24              THE DEFENDANT:  No, I haven't.

25              THE COURT:  Is your mind clear today?
```

```
 1                    THE DEFENDANT:  Yes.

 2                    THE COURT:  Do you feel healthy and focused

 3    and alert, except for your diabetes?

 4                    THE DEFENDANT:  Yes.

 5                    THE COURT:  Are you understanding everything

 6    I've said so far?

 7                    THE DEFENDANT:  Yes, sir.

 8                    THE COURT:  Mr. Schlosser, are you appointed

 9    or retained?

10                    MR. SCHLOSSER:  I'm appointed.

11                    THE COURT:  Have you discussed the matter of

12    pleading guilty carefully with your client?

13                    MR. SCHLOSSER:  Yes.

14                    THE COURT:  Is your microphone on, by the

15    way?

16                    MR. SCHLOSSER:  Yes.

17                    THE COURT:  Okay, I guess it was -- you were

18    just too far away.  I wasn't hearing it come through

19    the system.

20                    MR. SCHLOSSER:  Sorry.

21                    THE COURT:  That's okay.

22                    Does your client, in your judgment,

23    understand the rights that he'll be waiving by pleading

24    guilty?

25                    MR. SCHLOSSER:  He does, yes.
```

1              THE COURT:  Were you aware before today of

2    his learning disability and lack of formal education?

3              MR. SCHLOSSER:  I'm not sure I was aware of

4    his learning disability.  We certainly discussed his

5    background and I'm going to forward -- we've had

6    discussions about his medical condition because I've

7    asked a lot of questions about it, because I have some

8    specific knowledge about it.

9              THE COURT:  Okay.  Is he capable, in your

10   judgment, based on the conversations you've had with

11   him, of understanding the nature of this proceeding?

12             MR. SCHLOSSER:  Fully capable.

13             THE COURT:  Do you have any doubt about his

14   competence to tender a guilty plea at this time?

15             MR. SCHLOSSER:  None.

16             THE COURT:  Have you alerted him to the

17   maximum sentence and fine that can be imposed and

18   discussed with him the likely operation of the

19   sentencing guidelines as best you can anticipate it?

20             MR. SCHLOSSER:  Yes, Judge, we've had a

21   number of conversations.

22             THE COURT:  And he seemed focused and

23   capable of keeping up with you throughout.

24             MR. SCHLOSSER:  More than focused, yes.  He

25   understands what's going on.

```
 1                    THE COURT:  Thank you.
 2                    Mr. Armatruda, is it the understanding of
 3   the United States that Mr. Carter is a citizen of this
 4   country?
 5                    MR. ARMATRUDA:  It is, Judge.
 6                    THE COURT:  Thank you.
 7                    Mr. Carter.
 8                    THE DEFENDANT:  Yes.
 9                    THE COURT:  Have you had enough time to go
10   over your case very carefully with Mr. Schlosser and
11   have you done that?
12                    THE DEFENDANT:  Yes, sir.
13                    THE COURT:  Are you satisfied to have Mr.
14   Schlosser be the lawyer who is defending you?
15                    THE DEFENDANT:  Yes, sir.
16                    THE COURT:  Have you received a copy of the
17   superseding indictment, which is the newest set of
18   charges in your case?
19                    THE DEFENDANT:  Yes.
20                    THE COURT:  Have you reviewed that
21   superseding indictment very carefully with your
22   attorney?
23                    THE DEFENDANT:  Yes, I have.
24                    THE COURT:  The charges in this superseding
25   indictment have to do with narcotics distribution and
```

1   Count 1, the charge that your agreement says you wish

2   to enter a guilty plea to, accuses you of knowingly and

3   intentionally conspiring or agreeing to work together

4   with others to distribute cocaine and heroin between

5   January and May of this year.

6           Do you understand what you're accused of in

7   Count 1?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  You have a right to plead not

10  guilty to that charge and all of the other charges

11  pending in the superseding indictment and to persist in

12  any previously entered not guilty plea you may have

13  made.  You have that right even if you've committed the

14  crimes that are described in the superseding

15  indictment.

16          Pleading not guilty can never be lying to

17  the Court because every defendant, whether he's guilty

18  or not, has the right to plead not guilty.  It's the

19  way he exercises his constitutional right to a trial,

20  if he wants to go to trial.

21          Do you understand me?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  If you persist in any previously

24  entered not guilty plea or plead not guilty today, then

25  under the Constitution and laws of the United States,

1    you would be entitled to a speedy, public trial by a

2    jury, with your attorney's assistance, not only at the

3    trial but at all of the stages leading up to the trial,

4    on all of the charges that are pending against you.

5              Did you understand that?

6              THE DEFENDANT:  Yes, I did.

7              THE COURT:  At your trial, you would be

8    presumed to be innocent.  The prosecution would have to

9    prove that you were guilty by competent evidence and

10   beyond a reasonable doubt.  In other words, they've

11   have to overcome this presumption that you are innocent

12   with their proof.  The proof would have to be

13   admissible and legitimate evidence, and it would have

14   to convince each of the jurors of your guilt beyond a

15   reasonable doubt.

16             You would not have to prove that you were

17   innocent at the trial.  If the government failed to

18   prove that you were guilty beyond a reasonable doubt,

19   the members of the jury would have the duty to return a

20   not guilty verdict, and Judge Cogan would tell them

21   that.

22             Did you understand that?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  So then you can understand why

25   it sometimes happens that a jury will return a not

1    guilty verdict and acquit the defendant sometimes in

2    cases when they believe the defendant probably

3    committed the crimes in the indictment, because when a

4    jury finds a defendant not guilty, the jurors are not

5    necessarily saying that they believe the defendant is

6    innocent.  All that they're saying, all that's required

7    for a not guilty verdict is that the jurors are not

8    convinced beyond a reasonable doubt that the defendant

9    committed the charged crimes.

10            Did you understand me?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  If you proceeded to a trial, the

13   prosecutor's witnesses would be required to come into

14   the courtroom and to present their testimony against

15   you right in front of you and your lawyer.  Your lawyer

16   could ask questions of the prosecution's witnesses on

17   cross-examination.

18            Your lawyer could raise legal objections to

19   the evidence the prosecution tried to offer at the

20   trial in support of its case, and you and your lawyer

21   working together would have the right to call

22   witnesses, present physical evidence and make arguments

23   to the jury during the course of the trial.  You could

24   even subpoena witnesses you thought might be helpful to

25   your case and thereby require them to come to court to

1  testify on your behalf.

2         Did you understand all of that?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  At your trial, you yourself

5  would have the right to testify as a witness in your

6  own defense, if you made that choice, but nobody could

7  make you testify at the trial if you preferred not to

8  be a witness.  That's because the Constitution of the

9  United States says that no one may be required to say

10  anything that is self-incriminating.

11         If you decided that you did not want to

12  testify as a witness in your own defense at your trial,

13  Judge Cogan would tell the jurors that they could not

14  take your silence during the trial into account or hold

15  it against you in any way when they decided what their

16  verdict in your case should be.

17         Did you follow that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  On the other hand, if you offer

20  a guilty plea and Judge Cogan accepts it, you will then

21  be giving up your constitutional right to trial and all

22  of the other rights I've been telling you about today.

23  There will be no further trial of any kind in your

24  case.  You will have no right to appeal from the

25  judgment of guilt that will be entered against you

1  because of your guilty plea.

2          Judge Cogan will essentially convict you and

3  find you guilty based upon the words you say in my

4  courtroom this afternoon, and that will free the

5  prosecution of its responsibility to prove what you

6  did.

7          Did you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  If you did go to trial and the

10 jury found you guilty, you would then have a right to

11 take an appeal and ask a higher court to review the

12 legality of all of the steps leading up to your

13 conviction.  But when you plead guilty, your conviction

14 is based upon your own words.  And in that

15 circumstance, there's no right to appeal from the

16 conviction that follows.

17         Did you follow that?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  If you plead guilty, I'm going

20 to have to ask you questions about what you and the

21 other people named in the indictment were doing with

22 respect to drugs.  I'll ask those questions so that

23 Judge Cogan and I can be satisfied that your plea of

24 guilty is based on facts that really happened.  You

25 don't have to answer questions like that, unless you

1    want to go forward with your guilty plea.

2              If you do answer those questions and you

3    admit being involved in distributing drugs, you will be

4    surrendering your right not to say anything that is

5    self-incriminating.

6              Did you understand that?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Do you still want to give up

9    your right to trial and all the other rights I've been

10   telling you about, Mr. Carter?

11             THE DEFENDANT:  Yes.

12             THE COURT:  I understand you're making this

13   decision pursuant to the terms of a written plea

14   agreement.  That agreement has been marked Court

15   Exhibit 1.  My clerk is going to give it to your lawyer

16   now so that you can he can look at it together.

17             Do you recognize Court Exhibit 1 and does

18   your signature appear upon its last page?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Did you read that document or

21   have it read to you before you signed it?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Did you go over it very

24   carefully with your lawyer?

25             THE DEFENDANT:  Yes, I did.

1            THE COURT:  Did you understand what you were

2  signing?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Does that written agreement

5  contain a complete and accurate statement of everything

6  that you and the prosecution have agreed to with regard

7  to your case?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Has anyone promised you anything

10  in return for your guilty plea that is not written down

11  in your plea agreement?

12            THE DEFENDANT:  No.

13            THE COURT:  As soon as you're done, Mr.

14  Schlosser, I'll take it back from you.  Thank you.

15            As we've mentioned already, the plea

16  agreement contemplates your guilty plea to Count 1 of

17  the superseding indictment, and that's the count where

18  you're charged with conspiring or saying and agreeing

19  to work with others to distribute heroin and cocaine.

20            Do you have the charge against you clear in

21  your mind?

22            THE DEFENDANT:  Yes.

23            THE COURT:  I want to review with you the

24  penalties you face if you go forward with your guilty

25  plea.  The law you're accused of breaking authorizes

1  Judge Cogan to send you to prison for up to twenty

2  years.

3            Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  It also requires Judge Cogan to

6  impose a term of supervised release that is at least

7  three years long and could be as long as the rest of

8  your life.

9            Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Supervised release is a period

12 of time of at least three years and potentially as long

13 as life, but it won't start running until you finish

14 serving whatever prison term Judge Cogan imposes in

15 your case.  Once you finish serving that prison term,

16 you'll be released from prison but you won't really be

17 free because you'll be subject to the rules and

18 regulations of supervised release.

19             There will be a lot of them.  I can't tell

20 you what each and every one of them will be.  Some of

21 them will be the following:  There will be restrictions

22 on your right to travel freely.  You will have a

23 probation officer and you will have to report on a

24 regular basis to the officer, answer the officer's

25 questions honestly and follow the officer's

1   instructions carefully.  You will also be prohibited

2   from committing any new crimes.

3          And if you break any supervised release

4   rule, whether it's a new crime you've committed or not,

5   you could be arrested.  You could be brought back to

6   this courthouse and you could be sent back to prison

7   for up to two years.  You would get no credit against

8   this new two-year sentence for the time you spent

9   serving the original sentence you received or the time

10  your freedom was restricted on supervised release.  And

11  that two years would be attributable to this drug

12  charge and not any new crime, for which you could be

13  separately incarcerated.

14          Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  You could be fined as much as

17  one million dollars and you will be required to make a

18  $100 special assessment payment at or about the time

19  you are sentenced.

20          Is that clear to you?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Let me turn your attention then

23  to what we call the Sentencing Commission guidelines.

24  These guideline will be calculated by Judge Cogan and

25  they will provide him with a range of months within

1   which the law will suggest an appropriate sentence in

2   your case should be set.

3           Have you had a chance to discuss these

4   guidelines with Mr. Schlosser and to get his advice

5   about how they're likely to affect your sentence?

6           THE DEFENDANT:  Yes.

7           THE COURT:  The prosecutor has come up with

8   a guidelines estimate of 8 to 14 months, Mr. Armatruda,

9   in criminal history category 2 in a narcotics case?

10          MR. ARMATRUDA:  Yes, your Honor.

11          THE COURT:  Thank you.

12          -- of 8 to 14 months.  I'm sure that

13  estimate was reached carefully but it's not binding on

14  Judge Cogan.  Judge Cogan will decide the guideline

15  range he thinks is most accurate and appropriate in

16  your case.  He won't decide that, though, until he

17  receives a report, a report we call a presentence

18  investigation report.  That hasn't been written yet.

19          But when it's ready, you and your lawyer and

20  the prosecutor will all be allowed to read it.  Then

21  there will be a hearing in front of Judge Cogan and

22  you'll have the opportunity to speak at that hearing.

23  You can tell Judge Cogan if there is anything in the

24  report that you think is inaccurate or unfair.  And

25  after the judge hears from you, he'll make his own

1   decision about the guidelines, and it could be that

2   they're longer than the 8 to 14 months that Mr.

3   Armatruda and his office have estimated.

4            Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Even after the judge decides

7   what the guidelines in your case should be, he has the

8   duty to consider other factors involved in your case

9   and all of the particular circumstances of your

10  background and your criminal behavior.  He may then

11  decide that a sentence outside the guideline range he

12  calculates, maybe shorter but also maybe longer, is

13  most appropriate in your case and decide to impose that

14  sentence.

15           Is that clear to you?

16           THE DEFENDANT:  Yes.

17           THE COURT:  If you receive a prison term of

18  14 months or less, you will have no right to challenge

19  any aspect of your case whatsoever.  Even if you are

20  sentenced to prison for longer than 14 months, you may

21  not withdraw your plea of guilty on that basis and you

22  may not challenge your conviction on that basis.  The

23  only right you would have under that circumstance, a

24  sentence longer than 14 months, would be a right to

25  challenge the length of the sentence you received, if

1    you had a good faith basis to do so.

2              Is that clear to you?

3              THE DEFENDANT:  Yes.

4              THE COURT:  You may have heard of parole,

5    which is a program of early release from a prison term,

6    but it is a state court program of early release.  This

7    is federal court.  You'll be sentenced by a federal

8    judge and there's no parole in the federal system.  So

9    whatever sentence you receive from Judge Cogan, you

10   won't be released early from it on parole.

11             Is that clear to you?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you have any questions for me

14   or that you'd like to talk about privately with Mr.

15   Schlosser with respect to your rights, the charges

16   against you, the penalties you're facing, or anything

17   else?

18             THE DEFENDANT:  No, your Honor.

19             THE COURT:  Is everything I've told you

20   today clear?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Are you ready to enter your

23   plea?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Mr. Schlosser, do you know of

1    any reason why your client should not tender the guilty

2    plea contemplated by his agreement?

3                    MR. SCHLOSSER:  No, your Honor.

4                    THE COURT:  Mr. Carter.

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  With respect to Count 1 of the

7    indictment, how do you plead, guilty or not guilty?

8                    THE DEFENDANT:  Guilty.

9                    THE COURT:  Are you making this guilty plea

10   voluntarily and of your own free will?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  Have you been threatened or

13   forced by anyone to make this guilty plea?

14                   THE DEFENDANT:  No.

15                   THE COURT:  Other than what's written in

16   your plea agreement with the prosecution, has anyone

17   promised you anything in return for pleading guilty?

18                   THE DEFENDANT:  No.

19                   THE COURT:  Has anyone promised you what

20   sentence Judge Cogan will give you?

21                   THE DEFENDANT:  No.

22                   THE COURT:  What did you do that makes you

23   guilty?

24                   MR. ARMATRUDA:  Judge, can I just have a

25   brief moment to confer with counsel regarding the

1    allocution?

2              THE COURT:  Sure.  Did I overlook something?

3              MR. ARMATRUDA:  Not at all.  I just wanted

4    to make sure.

5              THE COURT:  Okay.

6              (Pause in Proceedings)

7              THE COURT:  Mr. Carter, my --

8              Did you want to confer with Mr. Carter for a

9    minute?

10              MR. SCHLOSSER:  Sure, thank you.

11              (Mr. Schlosser is conferring with the

12    defendant.)

13              THE COURT:  Okay.  Mr. Carter, my last

14    question to you was what you did that makes you guilty

15    of the crime.  Before you answer me, it's perfectly

16    appropriate that you consulted with your attorney but,

17    obviously, your answer has to be the truth as you

18    recall it and not just what people are asking you to

19    say, okay?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  So now you can tell me what

22    happened.

23              THE DEFENDANT:  Back in April, 2012, I made

24    a sale with another --

25              THE COURT:  You made a what?

1             THE DEFENDANT:  A sale.

2             THE COURT:  A sale.

3             THE DEFENDANT:  With another codefendant of

4    mine, Elijah Ingram, of heroin.

5             THE COURT:  Where did you make this sale?

6             THE DEFENDANT:  In Far Rockaway, Queens,

7    Beach 28th Street.

8             THE COURT:  And you and Mr. Ingram sold the

9    heroin together, you mean, or you sold it to him?

10            THE DEFENDANT:  No, he was with me while I

11   made the sale.

12            THE COURT:  Was he with you to help -- why

13   was he with you?

14            THE DEFENDANT:  Because I -- well, he gave

15   me a lift to where I had to go to make the sale.

16            THE COURT:  Were you making the sale at

17   someone else's instructions?

18            THE DEFENDANT:  No.

19            THE COURT:  You had your own independent

20   heroin business?

21            THE DEFENDANT:  No, it was --

22            MR. SCHLOSSER:  Were you working with Mr.

23   Ingram to do this?

24            THE DEFENDANT:  Oh, yes.

25            MR. SCHLOSSER:  Well, don't say yes, you

1  have to say --

2              THE DEFENDANT:  I was working -- Mr. Ingram

3  was making a sale.  Like I got it from him and I went

4  to go make the sale.

5              THE COURT:  So Mr. Ingram gave you the

6  heroin.

7              THE DEFENDANT:  Yes.

8              THE COURT:  And he accompanied you on the

9  sale.

10             THE DEFENDANT:  Well, he stayed outside

11 while I went into the pizza shop and made the sale.

12             THE COURT:  Did you share the money that you

13 got with Mr. Ingram after the sale?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Did you know when you went into

16 the pizza shop that you were carrying heroin with you?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And did you know that the

19 purpose of the trip to the pizza shop was to make the

20 heroin sale?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Is there anything further the

23 government would have me inquire of the defendant?

24             MR. ARMATRUDA:  No, thank you, Judge.

25             THE COURT:  Based on the information given

1    to me, I find that the defendant Mr. Carter is acting

2    voluntarily, that he fully understands his rights and

3    the consequences of his plea, and that his plea has a

4    factual basis.  I therefore respectfully recommend that

5    Judge Cogan accept the defendant's plea of guilty to

6    Count 1 of the superseding indictment (S-1), in full

7    satisfaction of his criminal liability for that

8    indictment.

9            Judge Cogan has scheduled sentencing for

10   February 21st at 10:30 a.m.  If that date is not

11   convenient to counsel, I urge you to direct your

12   request for modification to Judge Cogan's chambers.

13           MR. SCHLOSSER:  Did you say 10:30?

14           THE COURT:  I did say 10:30.  If I didn't, I

15   intended to.

16           Mr. Carter, between now and your sentencing

17   date, you're going to be interviewed by a probation

18   officer.  The reason for the interview is to help the

19   officer prepare the report Judge Cogan will rely upon

20   when he decides on your sentence.  Accordingly, I urge

21   you to be candid and cooperative with the probation

22   officer during that interview.

23           I take it, Mr. Armatruda, that this was not

24   an airport arrest and that there are no return of

25   property issues.

1          MR. ARMATRUDA:  No, Judge, there aren't.

2          THE COURT:  Thank you very much, everybody.

3  Anything else?  Okay.

4          MR. SCHLOSSER:  Thank you.

5          MR. ARMATRUDA:  Thank you.

6          THE COURT:  Good luck.

7               * * * * * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18   I certify that the foregoing is a correct

19 transcript from the electronic sound recording of the

20 proceedings in the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON       January 2, 2013